1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11  KELLY ALEXANDER, an individual,         No.  2:15-cv-00477-MCE-CKD
    DONALD PORTER, an individual,
12
                 Plaintiffs,
13                                            **MEMORANDUM AND ORDER**

14         v.

15  HUSSAM KUJOK, an individual;
    HUSSAM KUJOK, M.D., INC.; MARK
16  DEBRUIN, an individual; DEBRUIN
    MEDICAL CENTER, A.P.C.; GILBERT
17  MARTINEZ, an individual;  FAMILY
    MEDICINE AND AMBULATORY CARE
    CENTERS, INC.; DHEERAJ KAMRA,
18  an individual; CAPITOL INTERNAL
    MEDICINE ASSOCIATES; THOMAS
19  A. DEL ZOTTO, an individual;
    ROBERT W. LARSEN, an individual;
20  and DOES 1 through 10 inclusive,

21               Defendants.

22

23         Through this lawsuit, Plaintiffs Kelly Alexander and Donald Porter ("Plaintiffs"

24  unless otherwise noted) seek damages and injunctive relief under the Americans with

25  Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA").  The jurisdiction of this court

26  is premised on federal question jurisdiction in accordance with 28 U.S.C. § 1331.  In

27  addition to their federal claims under the ADA, Plaintiffs also assert pendant state law

28  claims under 1) California's Unruh Civil Rights Act, California Civil Code § 51, et seq.;

1

1   2) California's Disabled Persons Act, California Civil Code § 54, et seq.; 3) California's

2   Bane Act, California Civil Code § 52.1; and 4) common law negligence claims.   Finally,

3   Plaintiffs also assert a cause of action for violation of the Rehabilitation Act, 29 U.S.C.

4   § 794.  Presently before the Court are motions to dismiss brought by all six

5   doctors/medical entities being sued as Defendants:  1) Hussam Kujok  M.D. and his

6   medical practice, Hussam Kujok, M.D., Inc. (collectively "Dr. Kujok"); 2) Mark Debruin

7   and his medical practice, Debruin Medical Center A.P.C. ("Dr. Debruin"); 3) Gilbert

8   Martinez and his practice, Family Medicine and Ambulatory Care Centers, Inc.

9   ("Dr. Martinez"); 4) Dheeraj Kamra and his practice, Capitol Internal Medicine Associates

10  ("Dr. Kamra"); 5) Thomas A. Del Zotto ("Dr. Del Zotto"); and 6) Robert W. Larsen

11  ("Dr. Larsen").

12        All six doctors argue that Plaintiffs lack standing to pursue ADA claims because

13  they have no intent to return for further treatment, and that absent such intent subject

14  matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[1] is lacking.

15  Alternatively, Defendant physicians argue that Plaintiffs' claims fail to state a viable claim

16  against them in any event, and that dismissal under Rule 12(b)(6) is therefore

17  appropriate.  Finally, Dr. Larsen argues that Plaintiffs' prayer for punitive damages

18  should be stricken inasmuch as no such damages are authorized by any of the claims

19  asserted by Plaintiffs in this lawsuit.

20        For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED in

21  part and DENIED in part.[2]  Dr. Larsen's Motion to Strike the punitive damage allegations

22  is DENIED.

23  ///

24  ///

25  _____

26        [1] All further references to "Rule" or "Rules" are to the Federal Code of Civil Procedure unless
    otherwise noted.

27        [2] Having determined that oral argument was not of material assistance, the Court ordered this
    Motion submitted on the briefing in accordance with Local Rule 230(g).

28

1

2

**BACKGROUND**[3]

3       Plaintiffs, who are both profoundly deaf, use American Sign Language ("ASL") as

4 their primary means of communication. Both are on SSI and their Medi-Cal coverage

5 was assigned to the Hills Medical Group, a large consortium of some 3,800 physicians.

6 When their primary physician, Mark Moody, retired, both Plaintiffs needed to find a new

7 doctor within the Hills Group. Plaintiffs Alexander and Porter were initially referred for

8 that purpose to Drs. Kujok and Martinez, respectively.

9       Plaintiff Alexander was told by Dr. Kujok's office in April of 2014 that they were no

10 longer accepting new patients once told she needed an ASL interpreter. Plaintiff's

11 insurance agent then called and was ultimately told that Dr. Kujok was not willing to

12 provide interpreting services.

13      Following Dr. Kujok's refusal to provide medical treatment with the aid of an ASL

14 interpreter, Plaintiff Alexander sought care from several other Hills Physician Group

15 doctors.   In July of 2014, she was accepted as a patient by Dr. Debruin and scheduled

16 an initial appointment on July 28, 2014.  Dr. Debruin's office informed Plaintiff that they

17 would not schedule an interpreter.  Although his staff later told Plaintiff that they would

18 make the necessary arrangements, when Alexander presented for her initial visit she

19 was told that no interpreter had been ordered.  During the course of his evaluation,

20 Dr. Debruin told Alexander that she could communicate well and didn't need an

21 interpreter. When Dr. Debruin suggested they use notes, Alexander explained that ASL

22 is not English and is not directly translatable. According to Plaintiff, particularly when

23 technical terms are involved, use of ASL is critical for purposes of accurate

24 communication.  Dr. Debruin's insistence that Plaintiff could in that event communicate in

25 writing caused Alexander to leave his office.

26      Plaintiff Alexander was subsequently referred to a third potential primary care

27

28
[3] The facts in this section are drawn, in some cases verbatim, from the allegations as set forth in Plaintiffs' First Amended Complaint.

1   doctor, Dr. Kamra. Although Kamra's office staff originally advised Plaintiff that an ASL
2   interpreter would be provided, when she arrived for her appointment no interpreter was
3   present.  Plaintiff went ahead and saw Dr. Kamra anyway because the foot injury she
4   was suffering from had already been exacerbated by delay occasioned by the above-
5   described interpreter issues.  Alexander therefore felt she needed immediate attention
6   and could not wait to reschedule.  According to Plaintiff, her communication was
7   impeded without an interpreter and Dr. Kamra failed to correctly note Plaintiff's allergy to
8   iodine.
9        Dr. Kamra did refer Plaintiff to a podiatrist, Dr. Del Zotto, to evaluate a foreign
10   body in her left foot.  Dr. Del Zotto told Plaintiff, however, that his business partner,
11   Dr. Larsen, refused to provide interpreting services and that she would have to go to a
12   different podiatrist.   Plaintiff's appointment with Dr. Del Zotto was accordingly cancelled.
13        As a result of the conduct of the above-described physicians, Plaintiff Alexander
14   claims that she encountered almost a year's delay in obtaining treatment for her foot
15   condition which both exacerbated her physical discomfort and caused emotional
16   distress.
17        The history recounted by the other Plaintiff, Porter, is similar though not as
18   extensive.   Dr. Martinez did initially provide a sign language interpreter at his initial
19   intake visit with Plaintiff Porter on April 29, 2014.  When Martinez realized Plaintiff Porter
20   was watching the interpreter, Porter claims that Martinez "grabbed" Porter's face and
21   stated "don't look at her, look at me.  You can read my lips."  Porter at that point
22   explained that he needed to look at the interpreter to understand what Dr. Martinez was
23   saying.  While Porter continued to see Dr. Martinez, after his third appointment, Porter
24   claims that Dr. Martinez refused and/or failed to continue to provide a sign language
25   interpreter, despite Porter's claim he could not understand what Dr. Martinez told him by
26   lip reading alone.   Porter alleges  that Dr. Martinez' staff hung up on him repeatedly
27   when he called  through a relay operator service once the operators explained they were
28   calling on behalf of a deaf person.  Porter further alleges that Dr. Martinez' office was

1  prohibited from communicating with him by text message, even though that was an

2  effective way to schedule appointments, which resulted in Porter being required to drive

3  to Dr. Martinez' office and schedule his appointments in person.

4      Although Plaintiff Alexander never actually saw Dr. Martinez, she claims that

5  when she learned about Dr. Martinez' conduct from plaintiff Porter she cancelled her

6  own appointment with Martinez since she believed "there was a substantial likelihood

7  she would suffer the same discriminatory treatment if she was examined by Martinez."

8  FAC at ¶ 36.

9      Given these circumstances, Plaintiffs have sued the six doctors enumerated

10  above.  All six doctors have now filed similar, and in some instances virtually identical,

11  motions to dismiss under Rules 12(b)(1) and 12(b)(6).

12

13                          **STANDARD**

14

15      **A.   Motion to Dismiss for Lack of Standing**

16      Where a plaintiff lacks standing to bring a claim, courts lack jurisdiction to hear

17  that claim, and a motion to dismiss under Rule 12(b)(1) is appropriate.  Ballentine v.

18  United States, 486 F.3d 806, 810 (3d Cir. 2007).

19      **B.   Motion to Dismiss for Failure to State a Viable Claim**

20      On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

21  allegations of material fact must be accepted as true and construed in the light most

22  favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

23  (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

24  showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of

25  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly,

26  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A

27  complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual

28  allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to

1    relief requires more than labels and conclusions, and a formulaic recitation of the

2    elements of a cause of action will not do." Id. (internal citations and quotations omitted).

3    A court is not required to accept as true a "legal conclusion couched as a factual

4    allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at

5    555). "Factual allegations must be enough to raise a right to relief above the speculative

6    level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller,

7    Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must

8    contain something more than "a statement of facts that merely creates a suspicion [of] a

9    legally cognizable right of action")).

10         Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

11   assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and

12   quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

13   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

14   the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &

15   Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to

16   relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their

17   claims across the line from conceivable to plausible, their complaint must be dismissed."

18   Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

19   that actual proof of those facts is improbable, and 'that a recovery is very remote and

20   unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

21         A court granting a motion to dismiss a complaint must then decide whether to

22   grant leave to amend. Leave to amend should be "freely given" where there is no

23   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

24   to the opposing party by virtue of allowance of the amendment, [or] futility of the

25   amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

26   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

27   be considered when deciding whether to grant leave to amend). Not all of these factors

28   merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

6

1   carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

2   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

3   "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

4   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

5   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

6   1989) ("Leave need not be granted where the amendment of the complaint . . .

7   constitutes an exercise in futility . . . .")).

8       **B.  Motion to Strike**

9       Rule 12(f) provides that a district court "may strike from a pleading an insufficient

10  defense or any redundant, immaterial, impertinent, or scandalous matter."  "The function

11  of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must

12  arise from litigating spurious issues by dispensing with those issues prior to trial. . . ."

13  Whittlestone, Inc. v. Handi-Craft, 618 F.3d 970, 974 (9th Cir. 2010).

14

15                          **ANALYSIS**

16

17      **A.  Rule 12(b)(1) Motions to Dismiss**

18      As indicated above, standing is a jurisdictional issue, deriving from the

19  requirement that an actionable case or controversy be present.  Doe No. 1 v. Reed,

20  697 F.3d 1235, 1238 ( 9th Cir. 2012).  Standing must accordingly be "likely" as opposed

21  to merely "speculative" so that the claimed injury is redressable by a favorable court

22  decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  The only relief

23  available to private parties under the ADA is injunctive relief; monetary damages may

24  not be recovered.  See 42 U.S.C. § 12188; Jairath v. Dyer, 154 F.3d 1280, 1283 n.7

25  (11th Cir. 1998).   Where injunctive relief is sought, a plaintiff must establish a

26  reasonable likelihood of further violations.  National Wildlife Federation v. Burlington

27  Northern R.R., Inc., 23 F.3d 1508, 1511. ( 9th Cir. 1994)

28  ///

                                7

1    In the context of a plaintiff seeking injunctive relief under the ADA, this means that

2 Plaintiff here must demonstrate a "significant possibility of future harm." Vogel v. Rite

3 Aid Corp., 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014).  Defendants claim Plaintiffs lack

4 standing to assert injunctive relief under the ADA because they cannot show any

5 likelihood of ever returning for further care to the physicians who allegedly failed to

6 accommodate their disability, and consequently cannot qualify for an injunction curbing

7 further harm.  Despite this requirement that future harm be identified, the ADA

8 nonetheless makes it clear that a plaintiff need not engage in the "futile gesture" of

9 attempting to return to a physician if the plaintiff already knows that reasonable

10 accommodations will not be provided:

11           Nothing in this section shall require a person with a disability
              to engage in a futile gesture if such person has actual notice
12           that a person or organization covered by this title does not
              intend to comply with its provisions.
13

14 42 U.S.C. § 12188(a)(1).

15    This is consistent with the view that standing under remedial statutes, like the

16 ADA, should be interpreted as broadly as permissible under the Constitution.  See, e.g.,

17 Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211-12 (1972).

18    The "futile gesture" exception applies squarely to the circumstances of this matter.

19 Given the barriers to effective accommodation both Plaintiffs already experienced, they

20 were not required to resort to what would be the futile act of attempting to return to the

21 same physicians who had already refused to facilitate effective communication on their

22 part.  Moreover, and in any event, Court further notes that while Plaintiffs allege they

23 switched to a higher priced Medi-Cal provider that allowed them to choose physicians

24 not affiliated with Hills Medical Group, they also claim they may not be able to afford that

25 added cost in the long run and consequently may have to return to the Hills network and

26 encounter the same denial of services.  See FAC, ¶¶ 68-70.  Plaintiffs accordingly

27 reason that this eventuality may ultimately force them to return to Defendants for care

28 despite their attempt to avoiding having to do so at the present time.

8

1    Under either alternative, and given the ADA's broad scope as a remedial statute,

2  the Court finds that Plaintiffs have standing to assert their ADA claims against

3  Defendants herein.  The only exception is with respect to Plaintiff Alexander's claims

4  against Dr. Martinez.  Alexander never saw Dr. Martinez in the first place and

5  consequently did not personally encounter a denial of "full and equal treatment because

6  of her disability," as needed to assert any ADA claim in the first instance.  Wilson v. Pier

7  1 Imps. (US), Inc., 439 F Supp. 2d 1054, 1067 (E.D. Cal. 2006); Molski v. Hitching Post I

8  Rest., Inc., 2005 WL 3952248 at *3 (C.D. Cal. 2005).  While Alexander claims she was

9  dissuaded from doing so by Porter's experience with Dr. Martinez, any indirect harm in

10  that regard is insufficient to confer standing for Alexander to assert her First Cause of

11  Action under the ADA against Dr. Martinez.  Additionally, because Alexander's Second

12  and Third Causes of Action against Dr. Martinez, for violations of the Unruh Act and the

13  California Disabled Persons Act, are expressly premised on Alexander's ability to make

14  a claim under the ADA, those claims fail as against Dr. Martinez.  Because the

15  Rehabilitation Act is predicated on the same actual denial of services because of

16  disability, Plaintiff's Sixth Cause of Action fails to the extent it is directed to Dr. Martinez

17  as well.  See Duvall v. County of Kitsap, 260 F.3d 1124, 1135 ( 9th Cir. 2001). Finally,

18  since Plaintiff's Fourth Cause of Action for negligence against Dr. Martinez is also

19  premised on breaches of duties owed under the ADA, Unruh Act and the Disabled

20  Persons Act, it too fails.  See FAC, ¶¶ 95-97.

21    **B.  Rule 12(b)(6) Motions to Dismiss**

22    On a substantive basis, Defendants' 12(b)(6) arguments present factual issues

23  beyond the pleadings not amenable to disposition by way of a motion to dismiss.   Some

24  of the Defendant physicians claim, for example, that they offered acceptable alternatives

25  to Plaintiff's request for an ASL interpreter, such as  communicating by note or by lip

26  reading.  The fact remains, however, that Plaintiffs allege in their complaint that any

27  accommodations that may have been offered were not sufficient, since their ability to

28  understand either spoken or written English is compromised.  Plaintiff Alexander told

1  Dr. Debruin that she had to have an ASL interpreter to communicate effectively, and

2  could not understand him without one, either orally or in writing.  FAC, ¶¶ 45, 50-52.

3  Plaintiff Porter similarly told Dr. Martinez that he could not understand medical

4  terminology without an interpreter when Martinez grabbed his face and told Porter that

5  he should be looking at him and reading his lips.  Id. at ¶¶ 33-34.  Dr. Kamra refused to

6  provide ASL interpreting services to Plaintiff Alexander, which she claims "directly and

7  negatively impacted the quality of care provided" and resulted in the incorrect

8  documentation of Alexander's medical allergies and omitting her allergy to iodine.  Id. at

9  ¶ 59.

10      Accepting Plaintiffs' allegations as true, as we must in evaluating a motion to

11  dismiss, Plaintiffs claim they were excluded from meaningful participation in their medical

12  treatment because, to the extent Defendants were willing to offer any accommodation

13  measures, they were insufficient to facilitate effective communication.

14      The regulations implementing Title III of the ADA unequivocally require places of

15  public accommodation to "furnish appropriate auxiliary aids and services . . . to ensure

16  effective communication with individuals with disabilities."  28 C.F.R. 36.303(c)(1).  The

17  test is not whether any auxiliary aid was offered but whether that aid would be sufficient

18  to permit effective communication.  Case law provides no definition of what constitutes

19  effective communication.  To the contrary, any such determination is a question of fact

20  which cannot be resolved at this juncture.  On the basis of the pleadings, Plaintiff has

21  asserted that any accommodation offered was inadequate.

22      Plaintiffs have also alleged that they were excluded from treatment altogether

23  because of their disability. Dr. Kujok allegedly refused to see Alexander at all once he

24  was informed she was deaf and needed as ASL interpreter.  Id. at ¶¶ 29-31.

25  Dr. Martinez purportedly refused to allow Plaintiff Porter to even use a relay operator, or

26  to communicate by way of text message in scheduling an appointment.  Id. at ¶¶ 42-43.

27  Dr. Del Zotto informed Plaintiff Alexander that because his office refused to provide the

28  requested ASL interpreter she would need to get treatment from a different podiatrist.

1    Id. at ¶ 64.  Plaintiffs therefore also claim that they were prevented from seeking care

2    altogether, even aside from whether accommodations offered in the course or providing

3    care were adequate.

4         Plaintiffs' allegations are sufficient to state ADA claims as alleged in their First

5    Cause of Action.  In addition, because Second and Third Causes of Actions, for violation

6    of the Unruh and  Disabled Persons  Acts, are predicated on the ADA violations, and

7    since Defendants' arguments in contending that Plaintiffs cannot state a viable claim

8    mirror their arguments with regard to the ADA claim, Defendants' challenges to the

9    Second and Third Causes of Action also fail.[4]

10        With respect to the Fourth Cause of Action for negligence, that claim is also

11   predicated on the statutory violations as set forth in the prior causes of action.   Plaintiffs

12   have properly pled negligence in that regard.  A negligence claim premised on alleged

13   statutory duties requires only that the plaintiff plead violation of a statute, ordinance or

14   regulation, that the violation proximately caused injury of the sort the enactment was

15   designed to prevent, and that plaintiff is within the class of persons for whose protection

16   the enactment at issue was adopted.  Coppola v. Smith, 935 F. Supp. 2d 993, 1017

17   (E.D. Cal. 2013).   While a number of Defendants argue that the standards applicable to

18   professional negligence should apply, the Court disagrees.  Although Defendants herein

19   are physicians, they are being sued here as the owners and operators of places of public

20   accommodation, rather than because of their status as doctors per se.  Therefore the

21   professional negligence standards applicable to malpractice are not the proper yardstick

22   by which to measure the viability of Plaintiffs' negligence claims.

23   ///

24

25        [4] The Court notes that some of the Defendants have alleged that the Disabled Persons Act is limited to instances where physically disabled individuals are denied access to some public site or service

26   because of their service.  In the Court's view, however, hearing loss is no less of a physical impairment than mobility barriers which would preclude physical access due to other disabilities.  Significantly, too,

27   because the Disabled Persons Act specifically states that violations of the ADA qualify as violations of the Act (at Cal. Civ. Code § 54(c)) and since there is no question that the ADA protects claims like those made by Plaintiffs herein, any argument otherwise would run counter to the express terms of the Act.

28

1    Plaintiffs' Sixth Cause of Action[5] alleges violation of the Rehabilitation Act on

2   grounds that Section 504 of that Act prohibits any disabled person from being excluded

3   from participation, due to his or her disability, from any program or activity receiving

4   federal financial assistance.  Plaintiffs contend that the Rehabilitation Act applies

5   because their Medi-Cal coverage is jointly funded with both state and federal dollars.

6   Defendants' main challenge to the Rehabilitation Act claim rests with their assertion that

7   the implementing regulations of the Act are limited with regard to the provision of

8   "appropriate auxiliary aids to persons with impaired sensory manual, or speaking skills"

9   to funding recipients employing fifteen or more persons.  45 C.F.R. § 84.52(d).  Because

10  the operative First Amended Complaint is silent with respect to whether any of the

11  Defendants have the requisite number of employees, Defendants contend that the

12  Rehabilitation Act fails to apply.

13    Contrary to Defendants' argument, however, this is not a case only about

14  whether appropriate auxiliary aids have been provided.  Instead, it is more fundamentally

15  about allegations that Plaintiffs were denied access to Defendants' facilities altogether

16  because of Defendants' refusal to provide reasonable accommodations.  In general

17  terms, the Rehabilitation Act prohibits "denying a qualified handicapped person [health,

18  welfare and social services] on the basis of their handicap."  45 C.F.R. § 84.52(a)(1).  A

19  violation of that overarching provision, as Plaintiffs correctly point out, has no minimum

20  employee requirement.  Given the broad scope to which remedial provisions like those

21  contained in the Rehabilitation Act are entitled, the Court cannot focus solely on the

22  narrower question of auxiliary aids when Plaintiffs have in effect claimed that they were

23  denied access altogether to Defendants' facilities due to their failure to make any

24  reasonable accommodation.

25    Certain Defendants also argue that because Medi-Cal is a state as opposed to

26  federal program, Defendants receiving monies from Medi-Cal do not actually receive

27  ———————————
    [5] The Fifth Cause of Action, for violation of California's Bane Act (Cal. Civ. Code § 52.1), is limited
28  to claims made by Plaintiff Porter against Dr. Martinez and has not been challenged by Dr. Martinez in his
    Motion to Dismiss.

1   federal dollars even though Medi-Cal itself does.  See, e.g., Dr. Kamra Motion, ECF

2   No. 23-1, 9:23-28.  Defendants accordingly argue that in the absence of direct federal

3   financial assistance, any liability under the Rehabilitation Act is not triggered.  This

4   argument lacks merit.  Medi-Cal is California's Medicaid program, and Medicare and

5   Medicaid payments have been widely interpreted as federal financial assistance when

6   raised in the context of Section 504 litigation, like this case, brought against healthcare

7   entities receiving such payments on behalf of individuals receiving health services.  See.

8   e.g., United States v. Baylor Univ. Med. Ctr. 736 F.2d 1039, 1042 ( 5th Cir. 1983)

9   (Medicare and Medicaid payments to a hospital's inpatient and emergency services

10  program constituted federal financial assistance under Section 504); Doe v. Centinela

11  Hospital, 1988 WL 81776 (C.D. Cal. 1988) (residential alcohol and drug rehabilitation

12  program which received Medicare funds for treatment of some patients was a recipient

13  of federal financial assistance under the Rehabilitation Act).

14       Additionally, with regard to Plaintiff Alexander's attempt to obtain podiatric

15  treatment from Defendant Del Zotto, Dr. Del Zotto and his alleged business partner,

16  Defendant Larsen make some particular arguments that must be separately addressed.

17  Defendant Del Zotto claims that he is an employee of a podiatric group owned by

18  Defendant Larsen, and that as an employee he does not own or operate a place of

19  public accommodation so as to incur liability under the ADA, or under Alexander's other

20  claims that rest upon her having established an ADA claim.  Del Zotto includes a

21  declaration to that effect and contends he had no authority to enact or amend policy.

22  Del Zotto consequently alleges that Alexander cannot state a viable claim against him.

23       The problem with Del Zotto's argument is that it stems from matters outside the

24  pleading; namely, the declaration he submits.  Matters extraneous to the pleading should

25  not be considered in the context of a motion to dismiss under Rule 12(b)(6), which with

26  exceptions not relevant here must depend on the allegations made within the four

27  corners of the complaint.  See Standard Investment Chartered Inc. v. NASD,

28  621 F. Supp. 2d 55, 66 (S.D. N. Y. 2007).   Plaintiff's First Amended Complaint alleges

1   just to the contrary in stating that "DEL ZOTTO provides medical services to patients

2   who are members of the public."  FAC, ¶ 64.  While the FAC does allege that Larsen, as

3   the "business partner" in the office, was the individual who refused to provide the

4   requested ASL interpreter to Plaintiff Alexander, nowhere does it indicate that Del Zotto

5   was merely an employee.

6         Both Del Zotto and Larsen also argue that they should be dismissed from Plaintiff

7   Alexander's Rehabilitation Act cause of action on grounds that podiatry services are not

8   a covered benefit under California's Med-Cal program pursuant to California Welfare and

9   Institutions Code § 14131.10.  That argument is also misplaced.  Section 14131.10

10   states only the Medi-Cal will not pay for optional podiatric services, and Plaintiff alleges

11   that her foot injury did not entail such an "optional" treatment.  In any event, whether or

12   not the treatment Alexander required was optional or not requires a factual evaluation

13   that cannot be resolved here.

14       **C.**    **Motion to Strike**

15         As a final matter, Dr. Larsen asks the Court to strike Plaintiff's prayer for punitive

16   damages on grounds that no such damages are authorized under any of the causes of

17   action pled by Plaintiffs in their complaint.  Dr. Larsen accordingly contends that punitive

18   damages are unavailable here as a matter of law, citing an Eighth Circuit decision,

19   Tapley v. Lockwood Green Engineers, Inc., 502 F.2d 559, 560 ( 8th Cir. 1974)  to

20   support that proposition.

21         While Dr. Larsen correctly points out that Plaintiffs failed to oppose his argument

22   in that regard, the problem with the course he recommends is that it is directly contrary

23   to applicable precedent in this circuit.  In Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d

24   970 ( 9th Cir. 2010), the Ninth Circuit found that a Rule 12 motion  is not available to

25   strike legally inapplicable damage requests since an improper prayer is neither an

26   "insufficient defense" nor a "redundant, immaterial, impertinent or scandalous" so as to

27   come within the express purview of Rule 12.  Id. at 973-74, 76.  Consequently this Court

28   cannot grant Dr. Larsen's Motion to Strike.

1

**CONCLUSION**

2

3        For all the reasons set forth below, Dr. Martinez' Motion to Dismiss (ECF No. 28)

4    is GRANTED as to Plaintiff Alexander's claims against Martinez in their entirety.

5    Because Plaintiff Alexander essentially concedes that her claims against Martinez are

6    not well taken, no leave to amend will be permitted.   Dr. Martinez' Motion to Dismiss is

7    otherwise DENIED.  The Motions to Dismiss brought on behalf of Drs. Del Zotto (ECF

8    No. 22), Kamra (ECF No. 23); Kujok (ECF No. 26), Debruin (ECF No. 27), and Larsen

9    (ECF No. 65) are DENIED.   Plaintiff Larsen's request that punitive damages be stricken

10   from Plaintiffs' FAC is also DENIED.

11       IT IS SO ORDERED.

12   Dated:  January 20, 2016

13

14

15   _____

     MORRISON C. ENGLAND, JR, CHIEF JUDGE

16   UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24

25

26

27

28